IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH EUGENE HAWS<br><br>Defendant. | MEMORANDUM OPINION AND ORDER<br><br><br><br>Case No. 1:06CR00120<br>JUDGE: DEE BENSON |

Defendant Joseph Eugene Haws has been indicted for violating drug trafficking and firearm laws. He filed a motion pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to suppress evidence obtained by the government during a warrant-based search of his home. Defendant challenges the integrity of the affidavit submitted in support of the application for the warrant. The parties presented argument and evidence on this motion on March 21, 2007. After consideration of those arguments and the briefs filed by the parties, the Court DENIES the motion for the reasons stated below.

I.  FACTUAL BACKGROUND[1]

---

[1] The facts are taken from the transcript of the March 21, 2007 evidentiary hearing.

On September 13, 2006, Agent Brandon Beck of the Weber Morgan Narcotics Strike Force set up a controlled buy with a confidential informant. Agent Beck intended to purchase methamphetamine from Jodi Hartvigsen. Jodi did not have any methamphetamine so she called someone to bring the narcotics to her apartment. Jodi told Agent Beck that "Joe" was bringing the drugs. Defendant arrived in a blue Jetta with Jeremiah Eickholt following in a truck. Both men went into Jodi's apartment. Agent Beck and the confidential informant went into Jodi's apartment shortly after Defendant and Mr. Eickholt arrived. Agent Beck and the confidential informant went upstairs with Jodi where Agent Beck gave her $100.00 and she gave Agent Beck methamphetamine. At the time of the exchange, Defendant and Mr. Eickholt were downstairs in the living room.

Defendant and Mr. Eickholt left Jodi's apartment in the same vehicle and were stopped a mile or two away by other police officers for a traffic violation. Agent Ryan Reid interviewed Mr. Eickholt at the scene of the traffic stop and Agent Steve Haney interviewed Defendant. Mr. Eickholt reported that Defendant is a methamphetamine dealer and that he stores methamphetamine in his house. He also described where Defendant keeps methamphetamine in his house and other drug trafficking related evidence. Agent Haney reported to Agent Reid that during his interview of Defendant at the scene of the traffic stop, Defendant told Agent Haney that he left his house and went straight to Jodi's house where he delivered and sold methamphetamine.

Agent Reid wrote an affidavit for a search warrant of Defendant's residence after the controlled buy, the traffic stop, and the interviews with Mr. Eickholt and Defendant. Agent

Beck reported to Agent Watanabe what happened during the controlled buy and that information was given to Agent Reid from Agent Watanabe.  Agent Reid based the affidavit on the information from Agent Watanabe about the controlled buy, the evidence gathered during the traffic stop, statements by Mr. Eickholt and the Defendant's own statements to Agent Haney.

## II. ANALYSIS

Defendant argues that the information in the affidavit does not rise to the level of probable cause because it contains material falsehoods.  The United States Supreme Court has set out the standard for a challenge to the validity of an affidavit on the basis of the veracity of its statements:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.  In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks*, 438 U.S. at 155-56.

The Court previously determined that Defendant made "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant" which entitled him to a hearing.  *Franks*, 438 U.S. at 155.  That hearing was held on March 21, 2007.

*A. False Statements*

Defendant argues that a substantial portion of the affidavit for the search warrant contained information the affiant knew or should have known was false.

First, Defendant takes issue with the statement, "Agent Beck, acting in this case as an undercover officer, ordered a small amount of methamphetamine (over 1 gram) from Joseph through a woman he knew only as Jodi." (Search Warrant Aff., p. 2.)  Defendant correctly argues that Agent Beck neither knew Defendant nor tried to set up a buy from Defendant.  However, as Agent Beck testified, he was attempting to buy methamphetamine from Jodi, but she did not have any drugs.  She made a phone call and then told Agent Beck that "Joe" was bringing the drugs.  Defendant Joseph Haws then arrived at Jodi's apartment.  The Court finds that Agent Reid's statement in the affidavit is consistent with how the drug transaction turned out because his request for methamphetamine was made through Jodi and the methamphetamine came from Defendant.

Second, Defendant claims that there was no basis for Agent Reid to state in the affidavit that, "Jodi called Joseph who agreed to meet her and Agent Beck at a predetermined meeting place in an apartment complex at 1100 South 1200 West" because Agent Beck could not hear Jodi's telephone conversation when she tried to set up the buy. (Search Warrant Aff., p. 2.)  It is true that Agent Beck did not hear the telephone conversation, but Agent Beck testified that after several phone calls Jodi told Agent Beck that "Joe" was on his way.  Later Defendant arrived at Jodi's apartment located at 1100 South 1200 West.  The Court finds that Agent Beck's statement in the affidavit concerning Defendant meeting Jodi at her apartment is not false or made with

reckless disregard for the truth.

Third, Defendant disputes the statement in the affidavit that, "Joseph arrived in a black vehicle with another male, later identified as Jeremiah Eickholt." (Search Warrant Aff., p. 2.) Defendant and Mr. Eickholt arrived simultaneously at Jodi's apartment, although in different vehicles. The two men later left in the same vehicle. As stated above, Agent Beck reported to Agent Watanabe what happened during the controlled buy and that information was given to Agent Reid, the affiant, from Agent Watanabe. There is no basis to support a finding that in this regard Agent Reid exercised reckless disregard for the truth or made intentionally false statements. Furthermore, the distinction whether Mr. Eickholt and Defendant arrived in the same vehicle is immaterial for the issuance of the search warrant in this case.

Last is Agent Reid's statement in the affidavit that says, "Agent Beck then gave Jodi over one hundred dollars to buy methamphetamine who in turn gave it to Joseph. Joseph then gave the methamphetamine to Jodi who in turn gave the drug to Agent Beck. The entire transaction occurred with Agent Beck present." (Search Warrant Aff., p. 2.) Agent Beck testified that he did not see Jodi give the money to anybody or see Defendant give the methamphetamine to Jodi. Agent Beck was in the house, but did not observe any transaction between Jodi and Defendant. According to the extent this statement conveys the meaning that Agent Beck was actually present to personally observe the transfer of methamphetamine between Defendant and Jodi, the statement is inaccurate.

### *B. Probable Cause*

The issue under *Franks* thus becomes whether the allegations remaining in the affidavit

5

after the reference to Agent Beck's personal observance of the transaction between Defendant and Jodi is redacted remain sufficient to support a finding of probable cause to justify the search warrant for Defendant's residence. *Franks*, 438 U.S. at 156. The standard to be applied is whether the state judge had a substantial basis for concluding that probable cause existed based upon the "totality of the circumstances." *United States v. Cantu*, 405 F.3d 1173, 1176 (10th Cir. 2005). The "totality of the circumstances" test for probable cause was set forth by the United States Supreme Court:

> The task for the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause "requires a nexus between suspected criminal activity and the place to be searched." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000) (internal quotation marks and citation omitted).

Mr. Eickholt's interview with Agent Reid alone is sufficient to establish probable cause to search Defendant's house. Police officers observed Defendant and Mr. Eickholt in an apartment where a controlled buy took place. A short time later Defendant admitted to Agent Haney at the traffic stop that he went straight from his home to Jodi's apartment where he delivered and sold methamphetamine. Mr. Eickholt provided specific details about drugs in Defendant's home and other drug trafficking related evidence. Under the totality of the circumstances, the Court finds that the affidavit provides sufficient evidence to support the state judge's finding of probable cause for issuance of the warrant to search Defendant's home.

For the aforementioned reasons, it is ORDERED that Defendant's Motion to Suppress is DENIED.

Dated this 9th day of November, 2007.

_____
Dee Benson
U.S. District Court Judge